THE HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KYLIE STEELE,

                Plaintiff,

v.

NATIONAL RAILROAD PASSENGER
CORPORATION, d/b/a AMTRAK,

                Defendant.

Case No. 3:19-cv-05553-BHS

**DEFENDANT NATIONAL RAILROAD PASSENGER CORPORATION'S MOTIONS *IN LIMINE***

**NOTE ON MOTION CALENDAR: SEPTEMBER 24, 2021**

Defendant National Railroad Passenger Corporation ("Amtrak") hereby moves *in limine*[1] to prohibit plaintiff and plaintiff's counsel from suggesting, arguing, presenting evidence on, asking questions in reference to, exhibiting, using, or referring in any manner, whatsoever, at the trial of this action, directly or indirectly, to any of the items set forth below:

## MOTIONS *IN LIMINE*

### 1. Evidence Not Produced in Discovery, including Expert Opinion, Documents, Photographs Should Be Excluded.

The Court should prohibit Plaintiff from introducing expert opinion, documentation, photographs, or exhibits that have not previously been disclosed or produced in discovery. Federal Rule of Civil Procedure 26(a)(1)(A)(i)-(ii) requires that a party must disclose documents that the party may use to support its claims or defenses within 14 days after the parties Rule 26(f)

---

[1] Pursuant to LR 7(d)(4), counsel for Amtrak certifies that counsel for Amtrak conferred in good faith with Plaintiff's counsel regarding the issues presented by these motions *in limine* on September 3, 2021. Declaration of Andrew G. Yates ("Yates Decl."), September 9, 2021, at ¶ 2.

DEFENDANT NATIONAL RAILROAD PASSENGER
CORPORATION'S MOTIONS *IN LIMINE* - 1
CASE NO. 3:19-cv-05553-BHS

019188.0447/8654235.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

conference. This is a continuing duty, and the disclosure must be supplemented if the party later learns of additional witnesses or responsive information. *See* Fed. R. Civ. P. 26(c). The failure to make the required disclosures is not without its consequences. "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information . . . that is not properly disclosed." *Yeti by Molly Ltd. V. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). The introduction of untimely-disclosed evidence would thwart the purposes of discovery and unfairly prejudice Amtrak in the presentation of its case. FRE 403.

### 2. There Should Be No Reference to Discovery Orders or Discovery Issues.

Plaintiff should be prohibited from referencing any discovery issues, motions, and/or orders issued by this Court regarding discovery, because any such reference would be irrelevant and prejudicial pursuant to Rules 401, 402 and 403.

### 3. Motions on Expert-Related Issues.

It is well-established that proposed expert testimony that does not relate to any issue in the case is not relevant and therefore not helpful. Proffered expert testimony needs to advance a material portion of a party's case in order to be admissible. *Daubert v. Merrell Dow Pharm., Inc.,* 43 F.3rd 1311, 1315 (9th Cir. 1995) (Daubert II); *Hemmings v. Tidyman's Inc.,* 285 F.3rd 1174, 1184 (9th Cir. 2002). In addition, the proffered testimony must meet the test mandated by the *Daubert* decision. Under a *Daubert* analysis, the trial judge must determine that the offered testimony is properly grounded, well-reasoned, and not speculative. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 158 (1999). *See also* FRE 702 Advisory Notes (2000).

#### a. Michelle Brown, Psy.D.'s Opinions With Respect to Plaintiff's Alleged WorkAbilities After November 2019 Should Be Barred.

Dr. Michelle Brown, Psy.D. is a clinical psychologist. At her deposition, she testified that she treated until Plaintiff November 2019 and has not had any contact with her since then. 11:1-6. When asked about whether Plaintiff could work 40 hours a week after November 2019, Dr. Brown admitted that she could not say for sure since she did not know how Plaintiff has progressed since then. 44:22-45:8. Because Dr. Brown has not treated Plaintiff since November

DEFENDANT NATIONAL RAILROAD PASSENGER
CORPORATION'S MOTIONS *IN LIMINE* - 2
CASE NO. 3:19-cv-05553-BHS

019188.0447/8654235.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

2019, and because she admits that she did not know if Plaintiff had many any progress since November 2019, her testimony should be limited to her opinions based on her treatment from January 2018 through November 2019.

### b. Patricia Camplair, Ph.D.'s Opinions Should be Barred for Plaintiff's Failure to Comply with the Federal Rules of Civil Procedure.

Amtrak has previously requested that Plaintiff produce Dr. Patricia Camplair's complete file, including her testimony list and billing. Yates Decl., at ¶ 4 and Ex. B (Camplair Dep. 16:6-17:1; 22:4-25; 26:19-27:8) attached thereto. To date, Plaintiff has failed to do so. Yates Decl., at ¶ 5. In fact, Plaintiff's counsel did not discuss with Dr. Camplair the subject matter of the subpoena duces tecum and claimed that he would not accept service for experts. Ex. B (Camplair Dep. 24:10-23). But Plaintiff did not object to the subpoena. Ex. B (Camplair Dep. 24:20-23). More recently, on September 2, 2021, Plaintiff's office stated that the testimony list and billing records would be produced, but this still has not been done. Yates Decl., at ¶ 6 and Ex. C attached thereto. Assuming that Plaintiff produces this information no later than Friday, September 10, 2021, Amtrak will withdraw this motion.

Fed. R. Civ. P. 26(a)(2)(B)(v) requires that an expert report contain "a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition." Courts have repeatedly held that "the list of cases in which the witness has testified should at a minimum include <u>the name of the court or administrative agency where the testimony occurred</u>, <u>the names of the parties</u>, <u>the case number</u>, and <u>whether the testimony was given at a deposition or trial</u>." *Coleman v. Dydula*, 190 F.R.D. 316, 318 (W.D.N.Y. 1999) (emphasis added). *See also Baker v. Phoenix Ins. Co.*, No. C12-1788JLR, 2014 WL 12563556, at *1 (W.D. Wash. Feb. 12, 2014) (compelling the production of complete expert testimony history, including "all cases in which [the experts] testified in the last four years, and must include the name of each case, the cause number, the forum, the date of any testimony, and whether the testimony took place at trial or in a deposition"). Neither Plaintiff nor Dr. Camplair provided <u>any</u> of this information.

DEFENDANT NATIONAL RAILROAD PASSENGER
CORPORATION'S MOTIONS *IN LIMINE* - 3
CASE NO. 3:19-cv-05553-BHS

019188.0447/8654235.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

This Court recognizes the importance of disclosing expert testimony. *Freeman v. National Railroad Passenger Corporation*, No. C18-5584-BHS, Dkt. 108. Other courts have also made clear why experts are required to disclose a complete testimony history. "[T]he obvious purpose for requiring a list of prior testimony is to enable opposing counsel to obtain prior testimony, eliminate unfair surprise to the opposing party, and to conserve resources." *Hicks v. Dairyland Ins. Co.*, No. 2:08-CV-01687BESPAL, 2009 WL 2243794, at *7 (D. Nev. July 24, 2009); *see also Nguyen v. IBP, Inc.,* 162 F.R.D. 675, 682 (D. Kan. 1995) ("The 1993 amendments to the Federal Rules of Civil Procedure which instituted the disclosure requirement were an attempt to assure that all parties disclosed certain information concerning their expert witnesses, including certain background facts which would enable a party to prepare for cross-examination at deposition or trial"); *Hess v. White Castle Sys. Inc.,* 2020 WL 1529533, at *2 (S.D. Ill. Mar. 31, 2020) ("Adequate access to other cases in which an expert has testified allows the opposing party to obtain prior testimony and potentially identify inconsistent positions taken in previous cases for use in cross-examination"). Courts have offered yet another justification: that the "proliferation of marginal or unscrupulous experts will only be stopped when the other party has detailed information about prior testimony." *Elgas v. Colorado Belle Corp.,* 179 F.R.D. 296, 300 (D. Nev. 1998).

Fed. R. Civ. P. 37(c)(1) supplies the remedy to be applied where a party fails to comply with the expert disclosure requirements: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

Plaintiff is also not blameless in these inadequate disclosures. "[I]t is the responsibility of the party… and its counsel in selecting an expert witness to assure the expert's ability to comply with the requirements of Rule 26(a)(2)(B)." *Bethel v. U.S., ex rel. Veterans Admin. Med. Ctr. of Denver, Colorado*, 2007 WL 1732791, at *6 (D. Colo. June 13, 2007). As another court explained,

DEFENDANT NATIONAL RAILROAD PASSENGER
CORPORATION'S MOTIONS *IN LIMINE* - 4
CASE NO. 3:19-cv-05553-BHS

019188.0447/8654235.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

> A party may not simply retain an expert and then make whatever disclosures the expert is willing or able to make notwithstanding the known requirements of Rule 26. The adverse party should not be placed at a disadvantage or be deprived of the full benefits of Rule 26 by the selection of an expert who cannot or will not make the required disclosures. The selection and retention of an expert witness is within the control of the party employing the expert. To the extent that there is a disadvantage created by the expert's failure to disclose it must be borne by the party retaining the expert witness.

*Nguyen* at 681. Even if Dr. Camplair was unaware of her obligations, Plaintiff's failure to disclose the requested information is not excusable. *See, e.g., Palmer v. Rhodes Mach.*, 187 F.R.D. 653, 657 (N.D. Okla. 1999) ("Assuming [the expert] did not know of the requirements of the rule, certainly… counsel knew of the rule prior to employing [the expert]. A simple inquiry by… counsel prior to his retention would have averted this situation"). Nor is it acceptable to expect Amtrak to attempt to find this information on its own. "[A]n expert witness may not shift the burden of researching prior testimony to the discovering party by providing sketchy or inaccurate information." *Hicks* at *7.

The failure to provide a complete testimony list is not harmless. *See, e.g., Bethel* at *6 (finding that the failure was not 'harmless' where the moving party "cannot readily identify the cases and obtain the testimony; the burden of locating the testimony, if it can be located at all, appears to be substantial"); *Nguyen* at 682 ("the failure to disclose the facts which could reasonably allow the defendant to review prior testimony by the witness is not 'harmless'"). And courts have often precluded experts from testifying for this failure:

> The bottom line is that experts… should not be offering their services as testifying experts in federal court unless they are fully prepared to comply with the disclosure requirements… And attorneys should not retain experts to testify in federal court without obtaining, at the outset, assurances that the expert has the information at his disposal which is required to be included in the expert report required by that rule… The failure to comply was "without substantial justification" and was not "harmless."... In these circumstances, the exclusion of the expert's testimony is mandatory.

*Norris* at *5; *see also Elgas, supra.*; *Wallace, supra* (striking an expert who had "unambiguously stated that he cannot comply with [the] basic criteria" of the expert disclosure rules); *Hess, supra*

DEFENDANT NATIONAL RAILROAD PASSENGER
CORPORATION'S MOTIONS *IN LIMINE* - 5
CASE NO. 3:19-cv-05553-BHS
019188.0447/8654235.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

(granting the motion to strike because allowing the expert to testify "would undermine the necessity of following the Federal Rules and lower the bar for other experts"); *Fyfe v. Baker*, 2007 WL 1866882, at *1 (D. Vt. June 28, 2007) (granting motion to strike expert "for failure to provide a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years"). Other courts have "afforded the offending party time to cure the deficiencies in its expert's testimonial history" before precluding the expert altogether. *Bethel* at *6 (allowing 40 days to supply a complete testimony history, after which the expert would be stricken upon renewed motion); *Sheetz v. Wal-Mart Stores, Inc.*, 2018 WL 1453207, at *3 (M.D. Pa. Mar. 23, 2018) (allowing "one final opportunity to comply with the disclosure requirements of Rule 26" before excluding the expert's testimony at trial).

If the Court chooses to afford Plaintiff an opportunity to remedy and comply with the Rules to produce a list of testimony history, it must also allow Amtrak the opportunity to obtain an updated deposition of Dr. Camplair.

### 4. *Inflammatory Questioning, Statements, and Argument by Counsel, Including Attempts to Disparage Amtrak.*

Plaintiff's counsel may not engage in inflammatory and misleading questioning of witnesses, or make statements or arguments that are outside the range permitted at various stages of the trial. Plaintiff and her counsel should be also barred from making statements or arguments or eliciting testimony from their witnesses that is designed solely to disparage Amtrak rather than prove an issue in controversy. Such conduct should not be permitted.

### 5. *Cumulative Fact Witnesses Should be Barred from Testifying.*

To avoid cumulative evidence, Plaintiff should be barred from calling cumulative fact witnesses. Fed. R. Evid. 403 allows a court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of… needlessly presenting cumulative evidence." Local Rule 43(j) also generally prohibits a party from calling more than one expert on a given subject. The court has "considerable latitude in performing the Rule 403 balancing test." *Rogers v. Raymark Indus., Inc.*, 922 F.2d 1426, 1430 (9th Cir. 1991). More specifically, "the district court

DEFENDANT NATIONAL RAILROAD PASSENGER
CORPORATION'S MOTIONS *IN LIMINE* - 6
CASE NO. 3:19-cv-05553-BHS

019188.0447/8654235.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

has broad authority to limit the number of witnesses on a particular point to avoid cumulative evidence." *Lutz v. Glendale Union High School*, 403 F.3d 1061, 1071 (9th Cir. 2005). *See also Loux v. United States*, 389 F.2d 911, 917 (9th Cir. 1968) ("As a practical matter, the court needs the right to impose some limitation on the number of witnesses testifying about a particular fact. Decision as to how many must be left to the sound discretion of the judge."); *Barabin v. Scapa Dryer Felts, Inc.*, 2018 WL 1570781 (W.D. Wash. March 30, 2018) (barring additional expert testimony on the same topic due to its "limited probative value that is substantially outweighed by the danger of confusing the jury, undue delay, and needlessly presenting cumulative evidence.").

In her supplemental disclosure dated August 30, 2021, Plaintiff identified numerous lay witnesses who allegedly have knowledge of Plaintiff's alleged injuries and damages, including Nancy Steele (mother), Jason A. Steele (father), Kirin Casteel (friend), Robert Casteel (friend), and Niesha Fort (friend). Based on Plaintiff's supplemental disclosure, each of these witnesses' anticipated testimonies are virtually identical: they may testify as to Plaintiff's damages, the changes in Plaintiff following the incident, and Plaintiff's social interactions.

Plaintiff has also identified Sue Byers who may also offer testimony regarding the changes in Plaintiff following the incident, as well as the accommodations offered at school, her job prospects and earning potential, "and other topics not yet known or identified." If Plaintiff's vocational counselor, Anthony Choppa, offers testimony regarding Plaintiff's employability, Sue Byers' testimony is likely to be cumulative.

Plaintiff has also identified two mental health treating providers: Michelle Brown, Psy.D. and James W. Carson, both of whom are treating psychologists. Both will likely offer similar or identical testimonies.

### 6. *Rik Lemoncello is Not A Treater or Expert, and His Observations Should Be Limited to Plaintiff's Work At The Bakery.*

Rik Lemoncello, Ph.D. is a speech language pathology professor who helps run a not-for-profit bakery where Plaintiff used to volunteer. Yates Decl., at ¶ 7 and Ex. D (Lemoncello Dep.

DEFENDANT NATIONAL RAILROAD PASSENGER
CORPORATION'S MOTIONS *IN LIMINE* - 7
CASE NO. 3:19-cv-05553-BHS
019188.0447/8654235.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

9:4-9) attached thereto. Dr. Lemoncello testified that Ms. Steele is neither a client nor a patient. Ex. C (Lemoncello Dep. 17:11-13, 25:22-25). He has never seen her medical records. Ex. C. (Lemoncello Dep. 31:18-21). However, Dr. Lemoncello was Plaintiff's supervisor and job coach at the bakery. Ex. C. (Lemoncello Dep. 17:23-18:3). During her volunteer time at the bakery, Plaintiff worked in front of the house, where she operated the cash register, interacted with customers and packaged the cupcakes for customers. Ex. C (Lemoncello Dep. 31:15-17, 31:22-33:2). Plaintiff was training for a person-in-charge role in the back of the house, and Dr. Lemoncello testified at his deposition that he would not be comfortable with Plaintiff being the person in charge of four bakers who had acquired brain injuries in the back of the house because it was it was challenging for Kylie. Ex. C (Lemoncello Dep. 37:1-38:13). Instead, the bakery hired two licensed speech pathology who will take over back of the house operations. Ex. C (Lemoncello Dep. 38:1-13). Even the other person who was training for the person in change position was unable to succeed in that role, so the bakery decided to hire licensed therapist to fill that role. Ex. C (Lemoncello Dep. 38:14-39:10). Although Dr. Lemoncello observed Ms. Steele in several shifts, he admits that he is not a vocational rehabilitation counselor and was not even aware that Plaintiff had one, nor has anyone from the Office of Vocational Rehabilitation contacted him. Ex. C (Lemoncello Dep. 61:14-62:23). In fact, Dr. Lemoncello does not believe he has ever talked to Plaintiff about returning to another job. Ex. C (Lemoncello Dep. 63:5-14).

Based on Dr. Lemoncello's testimony, he is not a treating provider or a vocational counselor expert. If he is called to testify, Dr. Lemoncello's testimony should be limited only to his observations of Plaintiff at the bakery and no generalizations based on these observations should be made regarding Plaintiff's ability to work outside the bakery.

### 7. *All Unpaid Medical Expenses Should Be Barred.*

In her initial disclosures, Plaintiff identified injury-related medical bills that may be relevant to the nature and extent of her injuries. Medical bills should be excluded. In *Linton v. NRPC*, No. 3:18-cv-05564, Plaintiff's counsel disputed that Amtrak paid over $300,000 in medical expenses and necessitated that Amtrak fly out Charmeka Stewart (a claims

DEFENDANT NATIONAL RAILROAD PASSENGER
CORPORATION'S MOTIONS *IN LIMINE* - 8
CASE NO. 3:19-cv-05553-BHS

019188.0447/8654235.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

representative from Washington D.C.) to testify at trial that Mr. Linton's medical bills were in fact paid. Yates Decl., at ¶ 8 and Ex. E (*Linton v. NRPC*, 2/10/2020 TT 56:7-17) attached thereto. Ms. Stewart's testimony, which spanned nearly 30 pages of court transcript, was completely unnecessary and a waste of the court's time. In the Related Cases prior to the *Linton* trial, this Court expected that the parties would cooperate as to medical expenses paid and to reach an agreement as to the amount of outstanding medical expenses. There is no reason why the parties cannot work together on this issue in this case as well as future Related Cases. Thus, to the extent any medical bills have not been paid by Amtrak, the issue of medical expenses paid and any alleged outstanding bills should be resolved amicably. Accordingly, all evidence of unpaid medical expenses should be barred.

**Plaintiff's counsel does <u>not oppose</u> the following motions in limine (Yates Decl., at ¶ 9):**

### 8. Evidence of Amtrak's Liability Should Not be Permitted, and Testimony and Reports of Liability Experts Should be Barred (Allan F. Tencer, Ph.D.).

Since Amtrak has admitted liability, all liability evidence and references should be excluded because they are irrelevant and prejudicial. FRE 402 bars admission of any irrelevant evidence, and FRE 403 bars the introduction of evidence if its relevance is substantially outweighed by the danger of unfair prejudice. Accordingly, this Court should bar Plaintiff from introducing any liability evidence.

As a general rule, "[w]hen the defendant in a negligence case admits liability and contests only the question of damages, he is entitled to have excluded from the testimony all references to the manner in which the accident occurred except such as are relevant to the question of damages." *Snyder v. General Elec. Co.*, 47 Wn.2d 60, 68, 287 P.2d 108 (1955); *see also Jones v. Carvell*, 641 P.2d 105, 112 (Utah 1982) (citing *Snyder*, "the rule is well-established that where liability is admitted, evidence going only to liability is not admissible."); *Murray v. Mossman*, 52 Wash. 2d 885, 888, 329 P.2d 1089, 1091 (1958) (in an admitted liability case, the Court limited evidence about the specifics of the accident to details that had bearing on damages); *see also Barrick v. Am. Airlines, Inc.*, No. C16-5957-JCC, 2017 WL 3424874, at *1 (W.D. Wash.

DEFENDANT NATIONAL RAILROAD PASSENGER
CORPORATION'S MOTIONS *IN LIMINE* - 9
CASE NO. 3:19-cv-05553-BHS
019188.0447/8654235.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

Aug. 8, 2017)[2] (citing *Broncel v. H & R Transp., Ltd.*, 2011 WL 319822, (E.D. Cal. Jan. 28, 2011) (granting defendants a protective order prohibiting the deposition of the at-fault driver and written liability discovery where the defendants were willing to stipulate that the employee driver was negligent and that this negligence was the sole cause of the accident.); *Ayat v. Societe Air France*, 2008 WL 114936, (N.D. Cal. Jan. 8, 2008) (limiting discovery to damages issues where Air France admitted liability and withdrew its liability-based affirmative defenses in a case in which its plane had overshot a runway and crashed into a ravine).

There is no basis for the introduction of liability evidence at trial in this case. Examples of such evidence include, but are not limited to, the Amtrak General Order applicable to the Lakewood Subdivision, pre-revenue service hazard analyses, Amtrak's System Safety Program Plan, the event recorder data from the leading and trailing locomotives, and inward and outward facing video from these units, documents and testimony regarding the testing and training of the operating crews, references to mechanical or technical issues before the train left Seattle, and the over-speed that caused the derailment.

Amtrak would be unfairly prejudiced if Plaintiff is allowed to refer to the details of the derailment, or the causes of the derailment. Any evidence which is not related to Plaintiff's damages are completely irrelevant to any issues the jury will need to decide as only damages are at issue here. In the Related Cases that have gone to trial, the Court properly ruled that such evidence was not admissible in the damages portion of the trial. Amtrak's motion on this issue includes not only references to the incident themselves, but also any statements issued by Amtrak officials to the media and the public regarding the incident.

### a. *Plaintiff's Liability Expert and His Report Should Be Barred.*

Amtrak believes that it has reached an agreement regarding a stipulated set of facts and exhibits and that as a result Plaintiff will no longer be seeking to call Allan F. Fencer, Ph.D.

---

[2] Although *Barrick* permitted some liability discovery following the defendant's admission of liability for compensatory damages, it did so because defendant had not clearly admitted that it was the cause of plaintiff's injuries. Here, in dispositive contrast, Amtrak has expressly admitted liability for Plaintiff's injuries caused by the derailment.

DEFENDANT NATIONAL RAILROAD PASSENGER
CORPORATION'S MOTIONS *IN LIMINE* - 10
CASE NO. 3:19-cv-05553-BHS
019188.0447/8654235.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

Yates Decl., at ¶ 9. However, we file this motion in an abundance of caution to preserve the record.

The exclusion of liability evidence extends to the testimony and report of Allan F. Tencer, Ph.D. Since Amtrak has admitted liability, the only issue before the jury is the amount of damages that Plaintiff may be entitled to. Accordingly, Dr. Tencer and his report should be barred.

According to Plaintiff's expert disclosures, Dr. Tencer may be called to "testify regarding the level of acceleration exposure Ms. Steele experienced during the December 18, 2017 derailment." Yates Decl., at ¶ 3 and Ex. A attached thereto. Dr. Tencer's anticipated testimony and report focus solely on issues that go to liability, not damages. Dr. Tencer is not qualified to offer an opinion regarding the extent of Plaintiff's specific injuries, much less any resulting emotional damages. Fed. R. Evid. 702; *see also Smelser v. Norfolk S. Ry. Co.*, 105 F.3d 299, 205 (6th Cir. 1997) (biomechanics expert was not qualified to testify about the cause of the plaintiff's specific injuries), *abrogated on other grounds by Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997); *Burke v. TransAm Trucking, Inc.*, 617 F. Supp. 2d 327, 332 (M.D. Penn. 2009) (same). *See also Withrow v. Spears*, 967 F. Supp. 982, 993 (D. Del. 2013) (noting that accident reconstruction experts are not qualified to testify regarding the cause, existence, or extent of plaintiff's injuries); *Snyder v. Harrington*, No. 1:08-cv-1031, 2010 WL 4723483, at *3 (N.D. Ohio Nov. 15, 2010) (same).

By allowing Dr. Tencer to testify, the Court is permitting Plaintiff to introduce evidence bearing on liability and causation issues, neither of which is being tried. Since the question before the jury is limited to Plaintiff's damages, Dr. Tencer must be excluded on relevance grounds. Alternatively, even if Dr. Tencer's testimony is of some colorable relevance to Plaintiff's emotional injuries, the relevance of the testimony is substantially outweighed by the danger that it would only create unfair prejudice, confuse the issues, mislead the jury, and/or waste the Court's valuable time. Fed. R. Evid. 403.
DEFENDANT NATIONAL RAILROAD PASSENGER
CORPORATION'S MOTIONS *IN LIMINE* - 11
CASE NO. 3:19-cv-05553-BHS

019188.0447/8654235.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

### b. Plaintiff Should Be Barred from Calling Amtrak Employees or Third Parties, including representatives and agents of the National Transportation Safety Board to Testify, Regarding Safety or Liability Issues.

Because Amtrak has admitted liability and the only issue before the jury is the amount of Plaintiff's compensatory damages, Plaintiff should not be permitted to call Amtrak employees or third parties, including representatives and agents of the National Transportation Safety Board, to offer testimony regarding safety or liability issues.

### c. Plaintiff's Exhibits Relating to Liability Should be Barred.

The exclusion of liability should also extend to any exhibits that Plaintiff has identified as set forth in the pretrial order, including but not limited to the NTSB Exhibits, NTSB Witness Interviews, NTSB Statements for the Record, Photographs of Amtrak Train 501, Photographs of the Train Track, and the Point Defiance Bypass Project – WSDOT Presentation.

### d. All References to Positive Train Control Should be Barred.

Plaintiff's counsel should not be permitted to make any reference to or argument about Positive Train Control ("PTC"), or to elicit any testimony regarding PTC, including whether PTC has since been activated on the Point Defiance Bypass or any other Amtrak routes, or any reference or implication as to Amtrak waiting to return to service on the Point Defiance Bypass until PTC was fully activated. In the Related Cases, other plaintiffs' counsel have at various times attempted to argue that a fully-operational PTC system could have prevented the derailment. Of course, this goes to the issue of liability, which is not at issue in this damages-only trial. Moreover, these contentions are also irrelevant for an additional reason. Amtrak was not required to have a PTC system in place on December 18, 2017. 49 C.F.R. § 236.1005(b)(7)(i) ("Each railroad must complete full implementation of its PTC system by December 31, 2018."). There was absolutely no requirement that PTC be utilized or operable on the Lakewood Subdivision at the time of the derailment, and therefore, the absence of such a system is not relevant to any claim and should be barred under FRE 401.

To the extent Plaintiff's counsel raises PTC arguments, they are pre-empted by federal statute. "Under the preemption doctrine, states are deemed powerless to apply their own law due

DEFENDANT NATIONAL RAILROAD PASSENGER
CORPORATION'S MOTIONS *IN LIMINE* - 12
CASE NO. 3:19-cv-05553-BHS

019188.0447/8654235.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

to restraints deliberately imposed by federal legislation." *Veit, ex rel. Nelson v. Burlington N. Santa Fe Corp.*, 171 Wn.2d 88, 102, 249 P.3d 607, 614 (2011) (holding that excessive track speed claims based on Washington State tort law were preempted). Where, as here, a railroad safety issue is regulated completely by federal law, state law tort claims based on a different standard are preempted under long-standing and well-established United States Supreme Court precedent. *See, e. g.*, *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658 (1993) (excessive track speed claims preempted); *Norfolk S. Ry. Co. v. Shanklin*, 529 U.S. 344 (2000) (grade crossing safety device claims preempted). Any evidence regarding or arguments referencing PTC should be excluded as irrelevant, prejudicial, and confusing to the jury. FRE 401-403.

9. **All Media Reports Regarding the DuPont Derailment or Return to Service on the Point Defiance Bypass Should be Barred.**

In the years since the DuPont derailment, there have been numerous local and national media reports about the derailment. For example, on March 3, 2019, the television program *60 Minutes* ran a segment about Amtrak called "How Safe Are America's Railroads?" There has also been extensive coverage in the local media of both the derailment and of previously tried Related Cases, and Amtrak anticipates that there will be media coverage of the future return to service on the Point Defiance Bypass. Any reference of these programs or articles, or any other portrayal of Amtrak in the media, should be excluded. Amtrak also anticipates that there could be media coverage of this matter in the weeks leading up to trial and possibly during the trial itself. Media coverage of Plaintiff's case has no bearing on any of the damages issues that the jury will be asked to decide and could serve only to unfairly prejudice Amtrak or confuse the jury. As such, all evidence of and reference to media coverage should be excluded under FRE 401-403.

10. **Any Evidence or Argument about Congressional Intent (including any discussion of prior actions of any railroad, employer, or government entity that may have led, in whole or in part, to the promulgation of the FAST Act) Should Be Excluded.**

Evidence and argument concerning the intent of Congress are irrelevant and unfairly prejudicial. *See Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357, 366 (7th Cir. 1990)

DEFENDANT NATIONAL RAILROAD PASSENGER
CORPORATION'S MOTIONS *IN LIMINE* - 13
CASE NO. 3:19-cv-05553-BHS
019188.0447/8654235.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

(it is improper for a trial judge to permit the jury to infer that they may look to the parties or their witnesses for guidance on the law governing a case); *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997) ("Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards.").

If the jury is properly instructed on the applicable law, it is both unnecessary and inappropriate for the jury to hear an argument about Congress' intent in enacting the law. *See Stillman v. Norfolk & W. R. Co.*, 811 F.2d 834, 838 (4th Cir. 1987) (holding district court properly refused to allow plaintiff to argue about Congressional intent). Any such evidence of Congressional intent and related subjects should be excluded.

### 11. *Mention of these Motions in Limine or the Court's Rulings Thereon Should Be Excluded.*

These motions concern pre-trial evidentiary issues and mention of the motions themselves or the Court's rulings thereon should not be mentioned to the jury except as is necessary to enforce those rulings at trial.

### 12. *Evidence of Amtrak Derailments, Crossing Collisions, and Other Incidents Should Be Excluded.*

It is axiomatic that FRE 402 bars admission of any irrelevant evidence and that FRE 403 bars the introduction of evidence if its relevance is substantially outweighed by the danger of unfair prejudice. To the extent Amtrak trains have been involved in other derailments, crossing collisions, or other incidents, any reference to them should be excluded. These events include but are not limited to the July 2, 2017 derailment near Steilacoom, Washington, a May 12, 2015 derailment in Philadelphia, Pennsylvania, a January 31, 2018 collision between an Amtrak train and a truck in Virginia, and a February 4, 2018 collision between an Amtrak train and a freight train in Cayce, South Carolina.

None of these or any other incidents involve issues that relate to this case in any way whatsoever. Clearly, Amtrak would be unfairly prejudiced if Plaintiff is allowed to refer to these or any other similar incidents at any juncture of the case, which are completely irrelevant to any

DEFENDANT NATIONAL RAILROAD PASSENGER
CORPORATION'S MOTIONS *IN LIMINE* - 14
CASE NO. 3:19-cv-05553-BHS
019188.0447/8654235.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

issues the jury or the Court will need to decide. Amtrak's motion on this issue includes not only references to the incidents themselves, but also any statements issued by Amtrak officials to the media and the public regarding such incidents.

### 13. There Should Be No Evidence of or Argument Regarding the Comparative Wealth of the Parties.

Any reference to the size, power, or wealth of the parties would be improper and entitle Amtrak to a new trial. *See Tucker v. Kansas City Southern Railway Co.*, 765 S.W.2d 308, 312 (Mo. App. 1988). Plaintiff should be precluded from making any comparison between the wealth, power, or size of Defendant as opposed to the Plaintiff, or making any reference to the financial circumstances of the Plaintiff.

### 14. Plaintiff Should be Precluded from Referring to Liability Insurance.

It is well settled that any reference whatsoever that Amtrak had or has had any type of indemnity or liability insurance or insurance coverage of any sort or any statement to the effect that it is or may be protected by insurance is not admissible. FRE 411; *Goodwin v. Bacon*, 127 Wn.2d 50, 55, 896 P.2d 673, 676 (1995); *Brown v. Tucker,* 337 Ga. App. 704, 788 S.E.2d 810 (2016). Therefore, Plaintiff should be precluded from making any such references.

### 15. References to NTSB Report or Working Group Conclusions Should be Excluded.

The NTSB reports should be excluded. By statute, "[n]o part of a report of the [National Transportation Safety] Board, related to an accident or an investigation of an accident, may be admitted into evidence or used in a civil action for damages resulting from a matter mentioned in the report." 49 U.S.C. § 1154(b). Additionally, the NTSB working group's conclusions are not relevant to this case as they all go to the cause of the accident – an issue that is not in dispute and is confined to liability. Amtrak has admitted liability for compensatory damages. FRE 401. Moreover, the conclusions, if admitted, would be improper hearsay. FRE 802.

### 16. Plaintiff Should be Barred from Referencing Punitive Damages or Introducing Evidence on this Issue.

Plaintiff has not asserted a claim for punitive damages here. Dkt. 1. All references to

DEFENDANT NATIONAL RAILROAD PASSENGER
CORPORATION'S MOTIONS *IN LIMINE* - 15
CASE NO. 3:19-cv-05553-BHS

019188.0447/8654235.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

punitive damages, or the idea of a verdict meant to punish Amtrak also should be barred as irrelevant and prejudicial. FRE 402, FRE 403; *Computer Sys. Eng'g, Inc. v. Qantel Corp.*, 740 F.2d 59, 68 (1st Cir. 1984) ("It cannot be doubted that punitive damage evidence has 'a real potential for influencing the jury's determination of liability for and the amount of compensatory damages.'") (*quoting* J. Ghiardi & J. Kircher, Punitive Damages § 12.01 (1983)). Discussion of punitive damages or evidence related to punitive damages has no bearing on compensatory damages. FRE 401. Moreover, discussion of punitive damages being available in other jurisdictions, or even the idea of punitive damages, is likely to lead to jury confusion. FRE 403. This includes references to the jury being the "conscience" of the community, telling the jury to "send a message" or similar statements.

### 17. *Evidence of Other Settlements and Offers to Settle Plaintiff's Case.*

FRE 408 bars admission of evidence of settlements and compromises except in certain circumstances not applicable here. This evidence, and any evidence of attempts to resolve Plaintiff's claims, is inadmissible under FRE 408. This rule does not operate to exclude evidence of prior payments of Plaintiff's medical bills, which to the extent not stipulated, may be introduced as evidence in support of Amtrak's offset affirmative defense.

### 18. *No Mention of Fatalities At Any Stage of the Trial, including Voir Dire, Opening Statement, Direct and Cross-examination, and Closing.*

Amtrak anticipates that Plaintiff's counsel may attempt to arouse the passions of the jury by making alluding to, or directing statements that, passengers died in Train 501. Plaintiff and her counsel should be barred from making statements or arguments or eliciting testimony from their witnesses that suggest that there were any fatalities. For example, there should be no reference to fatalities resulting from the derailment because that would not be probative of Plaintiff's alleged injuries in this damages trial.

DEFENDANT NATIONAL RAILROAD PASSENGER
CORPORATION'S MOTIONS *IN LIMINE* - 16
CASE NO. 3:19-cv-05553-BHS
019188.0447/8654235.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

DATED this 7th day of September, 2021.

LANE POWELL PC

By  s/ Andrew G. Yates
Tim D. Wackerbarth, WSBA No. 13673
wackerbartht@lanepowell.com
Andrew G. Yates, WSBA No. 34239
yatesa@lanepowell.com

LANDMAN CORSI BALLAINE & FORD, PC

By  s/ Mark S. Landman
Mark S. Landman, *Pro Hac Vice*
mlandman@lcbf.com
John A. Bonventre, *Pro Hac Vice*
jbonventre@lcbf.com

*Attorneys for Defendant National Railroad Passenger Corporation*

DEFENDANT NATIONAL RAILROAD PASSENGER
CORPORATION'S MOTIONS *IN LIMINE* - 17
CASE NO. 3:19-cv-05553-BHS

019188.0447/8654235.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107