THE HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| **KYLIE STEELE**,<br><br>                 Plaintiffs,<br><br>v.<br><br>**NATIONAL RAILROAD PASSENGER CORPORATION, a/k/a AMTRAK, a District of Columbia corporation; and, DOES ONE THROUGH FIFTY,**<br><br>                 Defendants. | Case No. 3:19-cv-05553-BHS<br><br>**PLAINTIFF'S MOTIONS *IN LIMINE***<br><br>**NOTE ON MOTION CALENDAR SEPTEMBER 24, 2021**<br><br>**ORAL ARGUMENT REQUESTED** |

## RELIEF REQUESTED AND CERTIFICATION

COMES NOW Plaintiff Kylie Steele, through undersigned counsel, and hereby submits the following motions *in limine*, requesting an order that these matters not be admitted into evidence, or referenced by the parties, counsel, or witnesses in the presence of the jury. Pursuant to LCR 7(d)(4), counsel for Plaintiff certifies that the parties met conferred on September 3, 2021, regarding motions *in limine*. The parties will set forth any agreement in the parties' response after opportunity to review the entire motion.

**Plaintiff's Motions *In Limine*** - Page 1
Case No.: 3:19-cv-05553-BHS

**ROSSI VUCINOVICH P.C.**
1000 Second Avenue, Suite 1780
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

# MOTIONS IN LIMINE

**1. Motion to exclude evidence, argument or reference to unrelated injuries, illnesses, or conditions.**

Any evidence or references to unrelated injuries, illnesses or pre-existing conditions is irrelevant, unfairly prejudicial, and inadmissible if there is no competent evidence causally relating such injuries, illnesses or pre-existing conditions to Plaintiff's current injuries and claims. F.R.E. 401-403; *Little v. King*, 160 Wash. 2d 696, 705, 161 P.3d 345, 350 (2007).

In this matter, Plaintiff was questioned during deposition about several irrelevant, unrelated medical conditions. Plaintiff broke her right wrist snowboarding in approximately 2010 or 2011, with no lingering symptoms or complaints. Declaration of James K. Vucinovich ("Vuc. Dec."), ¶ 3, Exhibit 1, at p. 9:14-21. Plaintiff was previously diagnosed with vasovagal syncope, which can cause her to faint when "run-down and fatigued." *Id.* pp. 21:9 – 22:11. She takes no medication for the condition and there is no treatment available, but she recognizes the triggers for the condition and avoids them. *Id.* She has had one episode since the derailment but did not faint. *Id.* Plaintiff broke her foot in grade school and sustained a deep bone bruise in her foot in 2007 or 2008, possibly from playing soccer. *Id.* at p. 23:8-17. Plaintiff visited a chiropractor in Spokane in 2016 for neck pain she was experiencing. She was training for a marathon at the time and had "a few stressful deaths in the family" during that period. *Id.* at pp. 23:24 – 24:20. Plaintiff visited the university mental health counselor "a handful of times" while she was in college as a result of the death of a high school friend. *Id.* at pp. 27:17 – 28:5.

Plaintiff had a seizure at age 10, and underwent an MRI at that time, but has had no similar incidents since and has never taken any medication as a result of that seizure. *Id.* at pp. 22:17 – 23:4. Dr. Patricia Camplair, a clinical psychologist treating Plaintiff, was made aware of the

**Plaintiff's Motions *In Limine* - Page 2**
Case No.: 3:19-cv-05553-BHS

**ROSSI VUCINOVICH P.C.**
1000 Second Avenue, Suite 1780
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

seizure, reviewed the MRI report, and found nothing clinically significant in the findings that would relate to Plaintiff's current condition. Vuc. Dec., ¶ 4, Exhibit 2, Deposition of Patricia Camplair, Ph.D., at pp. 51:11 – 52:6. Further, Plaintiff was diagnosed with an astigmatism/congenital cataract. The only evidence on this issue is that it is not relevant to her current condition. Vuc. Dec., ¶ 5, Exhibit 3, Deposition of Bruce Wojciechowski, O.D., at pp. 29:21 – 37:5 ("[astigmatism/congenital cataract] has no clinical relevance to – to her situation." Ex. 3 at pp. 36:25 – 37:5.)

After a point in time after the derailment, Plaintiff switched birth control medications. She was experiencing migraine headaches as a result of the derailment. However, after the medication switch, she experienced a very severe migraine headache, in addition to several other symptoms. She eventually switched back to her original medication. Ex. 1, at pp. 53:5 – 54:12; 59:1 – 60:21; Vuc. Dec., ¶ 6, Exhibit 4, Deposition of James C. Chesnutt, M.D., at pp. 33:2-14; 53:22 – 54:7.

Any evidence or reference to these injuries, illnesses or pre-existing conditions is speculative, irrelevant, and unfairly prejudicial. F.R.E. 401-403; *Little v. King*, 160 Wash. 2d 696, 705, 161 P.3d 345, 350 (2007); *Wash. Irrigation & Dev. Co. v. Sherman*, 106 Wash. 2d 685, 691-92, 724 P.2d 997, 1001 (1986) (reversible error found because questions regarding subsequent accidents "improperly suggested to the jury that there may have been a superseding cause of Sherman's condition although no proof of such a cause is in the record"). Amtrak has no competent expert testimony linking any of these injuries, illnesses, or pre-existing conditions to Plaintiff's current complaints. Any evidence or reference thereto must therefore be excluded. *Riggins v. Bechtel Power Corp.*, 44 Wash. App. 244, 254, 722 P.2d 819, 824 (1986) (positive

**Plaintiff's Motions *In Limine* -** Page 3
Case No.: 3:19-cv-05553-BHS

ROSSI VUCINOVICH P.C.
1000 Second Avenue, Suite 1780
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

expert testimony is necessary to establish a causal link to a plaintiff's injuries when the injuries involve medical factors beyond an ordinary lay person's knowledge).

**2. Motion to exclude Plaintiff's medical records from being admitted into evidence.**

Relevant medical evidence should be introduced through the testimony of a qualified medical expert only, and Plaintiff's medical records should not be excluded as exhibits in this matter. Medical records now appear in electronic format, making it extremely difficult to read and interpret, as well as to curate for necessary redactions which leads to arbitrary selection of content to present to the jury. The records are subject to confusion and mischaracterization, using technical terms, abbreviations, and codes that the average person is not familiar with and may easily misinterpret. Further, efforts to quote from or read parts of medical records into the record require court review for hearsay exclusions, as well as for relevance and unfair prejudice considerations.

Plaintiff is not making any claim for past subrogated medical expenses, or for past out-of-pocket medical expenses, eliminating the necessity of introduction of bills and records. (Note: The parties are working toward consensus on this). Medical records should therefore be excluded from trial and the contents admitted through competent medical testimony only to avoid the unfair prejudice, confusion, speculation, cumulative presentation of evidence and hearsay objections that would arise.

Neither F.R.E. 803(a)(4) nor the business records exception, F.R.E. 803(a)(6) and RCW 5.45.020, create a wholesale exception to the hearsay rule for medical records. Counsel should not refer to or quote from any entries contained in medical records unless and until the court has ruled such records admissible. *Young v. Liddington*, 50 Wash. 2d 78, 309 P.2d 761 (1957).

**Plaintiff's Motions *In Limine*** - Page 4
Case No.: 3:19-cv-05553-BHS

**ROSSI VUCINOVICH P.C.**
1000 Second Avenue, Suite 1780
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

1 Medical records are out-of-court statements offered for the truth of their content, and thus are
2 inadmissible as hearsay absent an applicable exception to the hearsay rule.

3      F.R.E. 803(a)(4) does not apply for the admission of statements by the doctor or his staff.
4 "Rule 803(a)(4) applies only to statements made by the patient to the doctor, not the reverse."
5 *Bulthuis v. Rexall Corp.*, 789 F.2d 1315, 1316 (9th Cir. 1985) (emphasis added). A health care
6 provider's opinion contained in a medical record does not fall within the (a)(4) exception to the
7 hearsay rule. See *Miler v. Arctic Alaska Fisheries Corp.*, 133 Wash. 2d 250, 944 P.2d 1005
8 (1997); *Wash. Irrigation. & Dev. Co. v. Sherman*, 106 Wash. 2d 685, 724 P.2d 997 (1986).
9 "[Medical] records do not differ from any other kind of record kept in the regular course of
10 business. [Medical] records, to be admissible under this act, must be subject to the same test as
11 to content as are applied to other business records." *Young*, 50 Wash. 2d at 83, 309 P.2d at 764.

12      Modern medical records all appear in electronic format and have become very difficult
13 to read and decipher. Content curation is particularly burdensome and difficult, as each document
14 must be reviewed for hearsay concerns, speculative opinions, or other evidentiary issues, and
15 requires substantial redaction which leads to arbitrary selection of the content presented, and
16 therefore highlighted for the jury. Similarly, it invites speculation and conjecture on the part of
17 the jury as to the redacted portions of such documents.

18      In *Stehn v. Cody*, 74 F. Supp. 3d 140, 150–51 (D.D.C. 2014), the plaintiff was struck by
19 a car while crossing the intersection and made statements to the police office at the scene about
20 what occurred in the incident, as well as her injuries and damages. The officer included this
21 narrative in his police report, and the Court was faced with the question of the admissibility of
22 the report and its contents. The report was offered for the statements made in the narrative

23

24 **Plaintiff's Motions** *In Limine* - Page 5           **ROSSI VUCINOVICH P.C.**
    Case No.: 3:19-cv-05553-BHS                                        1000 Second Avenue, Suite 1780
                                                                                                     Seattle, Washington 98104
25                                                                                                      (425) 646-8003/ Fax (425) 646-8004

regarding the plaintiff's injuries but needed substantial redaction regarding the remainder of the narrative. In holding the report was not admissible, the Court stated:

> Without a more complete copy, the Court concludes that this fragment fails the balancing test of Rule 403. The police *report would have negligible probative value because the officer's testimony, together with the testimony of the treating medical professionals, could replicate anything that the jury could glean from this fragment. See* Fed. R. Evid. 403. At minimum, admitting this portion of the narrative would be confusing to the jury. Moreover, even in Plaintiff's view, the jury would be faced with a significantly redacted narrative. Asking the jury to fill in missing words in this statement could easily engender needless and possibly prejudicial speculation by the jury about the redacted portions. In other words, the Court concludes that that the negligible probative value of this testimony is "substantially outweighed" by a danger of confusing the jury, possible prejudice, and needlessly presenting cumulative evidence, and therefore it is excluded. (Emphasis added.)

*Stehn v. Cody*, 74 F. Supp. 3d 140, 150–51 (D.D.C. 2014).

The same dangers, and the same needlessly cumulative testimony, exist with respect to the admission of redacted medical records. Plaintiff's treatment providers may be called as witnesses and provide testimony as to the treatment memorialized in the records. The records may be used to refresh memories, if necessary, and bring to the attention of the witnesses portions the parties wish to specifically address. Admission of the records themselves will be a needless presentation of cumulative evidence as the "testimony of the treating medical professionals, [will] replicate anything that the jury could glean from" the redacted medical record itself. Further, admission of the redacted records invites speculation and conjecture on the part of the jury as to the redacted information. Since the jury will hear testimony from the treater regarding the records, admission of the records into evidence has negligible, if any, probative value, and creates the substantial danger of unfair prejudice, speculation, and confusion of the jury, and wastes time as it needlessly present cumulative evidence.

**Plaintiff's Motions *In Limine*** - Page 6
Case No.: 3:19-cv-05553-BHS

**ROSSI VUCINOVICH P.C.**
1000 Second Avenue, Suite 1780
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

Further, admission of the medical records themselves into evidence serves to provide a "transcript" of the trial to the jury of only selected portions of evidence. The Ninth Circuit Pattern Instructions specifically advise the jurors that they will not receive a transcript of the trial and will have to "make your decision based upon what you recall of the evidence." Ninth Cir. Pattern Jury Inst. 1.17. To allow select medical records into evidence, after treaters have already been questioned about those records, serves only to highlight and create a "transcript" for the jury of only selected pieces of evidence. The rule of completeness, partially codified at F.R.E. 106, allows the opposing party to immediately introduce completing information to prevent the offering party from presenting a "misleading-tailored snipped" of evidence. *United States v. Sanft*, CR 19-00258 RAJ, 2021 WL 3403729, at *2 (W.D. Wash. Aug. 4, 2021), *reconsideration denied*, 2:19-CR-00258-RAJ, 2021 WL 3675030 (W.D. Wash. Aug. 19, 2021). However, this rule does not ameliorate the harm of introducing tailored snippets of records. The opposing party must then introduce the entire record, which will be heavily redacted and subject to speculation and conjecture by the jurors, will be replete with terminology and abbreviations and in a format that will be indecipherable to likely every juror.

The jury will hear the evidence contained in the medical records through the testimony of the treaters, who can "translate" those records into terminology and language understandable for the average lay juror. Plaintiff is not claiming any past medical expenses, or any past out-of-pocket medical expenses, as damages. Medical bills are therefore wholly irrelevant, and medical records are irrelevant, create unfair prejudice, and present needless cumulative evidence which will likely confuse rather than enlighten the jurors. Therefore, the introduction of any medical records or bills into evidence should be precluded.

3. **Motion to exclude evidence of surveillance on Plaintiff.**

Plaintiff's Motions *In Limine* - Page 7
Case No.: 3:19-cv-05553-BHS

ROSSI VUCINOVICH P.C.
1000 Second Avenue, Suite 1780
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

Any surveillance photographs, documents, and video produced by Amtrak in discovery in this matter, and any subsequent similar surveillance materials that Amtrak has taken but failed to produce, should be excluded. Plaintiff has and will freely admit to all activities set forth in the surveillance produced, and admission of the tapes therefore is cumulative and unnecessary as they do not serve any purpose for impeachment. F.R.E. 403, 608. The surveillance also includes photographs and messages from friends and relatives of Plaintiff which is irrelevant to the issues in this matter. F.R.E. 401 – 403. Further, any surveillance not produced to date violates the provisions of Fed. R. Civ. P. 26 and Plaintiff's discovery requests as Amtrak has failed to supplement or otherwise disclose any additional surveillance.

On August 24, 2020, Amtrak responded to Plaintiff's interrogatory and produced 25 pages of surveillance documents and two surveillance videos. See Vuc. Dec., ¶ 7, Exhibit 5, Interrogatory No. 6. Plaintiff has reviewed the materials contained in Exhibit 5 hereto and does not dispute that she is depicted in the photographs and videos and that she engaged in those activities. Since Plaintiff admits to the "evidence" contained in the surveillance documents, photographs and videos, the surveillance materials, particularly the videos, have no relevance to the present matter.

> The videotapes in question are relevant to the issue of damages because they demonstrate the extent of Jones's injuries and alleged incapacitation. Nonetheless, the videotapes do not appear to contradict any of the evidence in this case. …
>
> As described in the parties' briefs, the videos do not support the inference that Jones misrepresented the nature or extent of his injuries. The probative value of the videos is therefore substantially outweighed by the danger of unfair prejudice to Jones.

*Jones v. Graphic Arts Finishing Co.*, 08 C 3327, 2012 WL 10131038, at *4 (N.D. Ill. Jan. 13, 2012). *See also Shushereba v. R.B. Indus., Inc.*, 104 F.R.D. 524, 532 (W.D. Pa. 1985) (surveillance videos showing plaintiff engaged in work were admissible *because* they refuted the

**Plaintiff's Motions *In Limine*** - Page 8
Case No.: 3:19-cv-05553-BHS

ROSSI VUCINOVICH P.C.
1000 Second Avenue, Suite 1780
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

plaintiff's direct testimony that he could not return to work due to his pain levels, and specifically refuted the plaintiff's direct testimony denying that he performed the activities shown in the videos).

Given Plaintiff's admission of these activities, Amtrak should be precluded from offering any of the surveillance materials at trial of this matter. Such evidence is irrelevant, unfairly prejudicial, unnecessary cumulative testimony, and does not serve any impeachment purposes. F.R.E. 401 – 403, 608.

Further, should Amtrak attempt to produce any additional surveillance photographs or videos of Plaintiff, such evidence and any reference thereto should be excluded at trial. In response to a proper discovery request, a party must disclose evidence even if the party intends only to use it for impeachment purposes. "Unlike the initial- and pretrial-disclosure requirements, the discovery rules do not exempt from disclosure information to be used 'solely for impeachment.' See Fed. R. Civ. P. 26(b)(1) & advisory committee's note." *Derouin v. Kenneth L. Kellar Truck Line, Inc.*, C08-1049-JCC, 2010 WL 11684278, at *2 (W.D. Wash. Nov. 8, 2010). "[E]ven if the video recording contained only impeachment evidence …, a party must disclose impeachment evidence in response to a properly tailored discovery request." *Id.* (Emphasis added.) The Eastern District similarly has held: "'A party may not, under any circumstances, hold back materials responsive to a proper discovery request because it prefers to use the evidence as surprise impeachment evidence at trial.'" *Salazar v. Monaco Enterprises, Inc*, 2:12-CV-00186-LRS, 2015 WL 8773279, at *3 (E.D. Wash. Dec. 14, 2015) (quoting *Varga v. Rockwell Int'l Corp.*, 242 F.3d 693, 697 (6th Cir. 2001). Plaintiff made a proper discovery request. Amtrak has not supplemented its response and discovery is closed.

**Plaintiff's Motions** *In Limine* - Page 9
Case No.: 3:19-cv-05553-BHS

> "A party … who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response:
>
> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing(.)"

Fed. R. Civ. P. 26(e)(1). Therefore, any additional surveillance that has not been previously disclosed by Amtrak must be excluded.

Similarly, Amtrak may not argue work-product privilege:

> "Where an objection to discovery requests on the basis of the work product doctrine is made, the objecting party must supply a privilege log that details all such documents. The burden of proof lies with the proponent of the privilege and each document must be tested against the adequacy of the party's privilege log and supporting material."

*Point Ruston, LLC v. Pac. Nw. Reg'l Council of United Bhd. of Carpenters & Joiners of Am.*, No. C09-5232BHS, 2010 WL 605563, at *2 (W.D. Wash. Feb. 18, 2010). Amtrak responded to Plaintiff's discovery request and has never claimed work-product privilege or produced a privilege log. Therefore, the withholding of any additional surveillance material cannot be justified under the work-product privilege and must be excluded.

4. **Motion to exclude evidence of the time or manner of Plaintiff's retention of an attorney.**

The time or circumstances of Plaintiff's retention of counsel, or any fee of counsel, is not relevant and would be an attempt to unfairly prejudice Plaintiff. F.R.E. 402 and 403. Further, any evidence of prior attorneys, and any reference or statement that Plaintiff was "fired" by a prior attorney, should also be excluded. "The time or circumstances under which the plaintiffs contacted attorneys or employed their attorneys in this case is not relevant to any matter to be decided by the jury." *Healey v. Ferro Corp.*, No. C07-0717JPD, 2008 WL 3047299 (W.D. Wash. May 13, 2008); *State v. Sexsmith*, 186 Wash. 345, 350, 57 P.2d 1249, 1251 (1936). The fact of

**Plaintiff's Motions *In Limine*** - Page 10
Case No.: 3:19-cv-05553-BHS

**ROSSI VUCINOVICH P.C.**
1000 Second Avenue, Suite 1780
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

and terms of retention of counsel are not facts that are of consequence to a determination of this matter, and any mention of or reference to these facts should be excluded.

A medical record on which Plaintiff was examined during her deposition states that Plaintiff was "fired" by a prior attorney. Ex. 1, at p. 79:13-25, and exhibit 9 thereto (page NPC000021). Any reference to this record or this statement in this record poses a very high risk of significant unfair prejudice and misuse by the jury. F.R.E. 403. Amtrak should be instructed not to question any witness or make any reference to this statement during trial.

**5. Motion to exclude evidence not produced in discovery.**

The discovery deadline in this matter was June 14, 2021. *See* Dkt. No. 10. "[T]he purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998). Any evidence not produced by Amtrak during discovery should therefore be excluded.

**6. Motion to exclude improper character evidence of evidence of "good" acts of Amtrak.**

Any evidence or reference to the "good character" or "good" acts by Amtrak should be excluded, including any benefits provided to Plaintiff after the derailment. Evidence of character is never admissible in a civil trial to prove action in conformity therewith. F.R.E. 404(a), Advisory Committee Notes, 2006 Amendments. Amtrak is not allowed to attempt to introduce any evidence or make any argument or references to its "good character." This is an admitted liability claim; the only issue is the nature and extent of Plaintiff's damages. Any evidence of "good" acts, including any benefits provided to Plaintiff after the derailment, or any other acts in

**Plaintiff's Motions *In Limine*** - Page 11
Case No.: 3:19-cv-05553-BHS

ROSSI VUCINOVICH P.C.
1000 Second Avenue, Suite 1780
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004

the community at large, must be excluded as it is irrelevant, unfairly prejudicial and its only intention would be to improperly influence and confuse the jury. F.R.E. 401 - 403.

7. **Motion to exclude argument or reference regarding failure to call witnesses.**

Amtrak should be precluded from commenting in any manner or making any argument regarding any witness not called by Plaintiff. It would be error to allow defendant to suggest any adverse inference based on an alleged failure of Plaintiff to call any witness. See *Carlos v. Cain*, 4 Wash. App. 475, 479, 481 p.2d 945, 948 (1971). Amtrak has been provided with all disclosures and discovery on witnesses and has equal opportunity to produce witnesses. It is improper for Amtrak to comment in any manner as it is of no consequence to any material fact, and serves only to confuse the issues, and to mislead and improperly influence the jury. F.R.E. 401 – 403.

8. **Motion to exclude evidence of tax on recovery.**

The court should exclude evidence relating to the fact that a recovery by Plaintiff would, or would not be, subject to federal income taxation or any other form of taxation. This is not a case where Plaintiff is projected to have an "extremely high income" on a yearly basis, and therefore will not cause "injustice to a defendant from ignoring future taxes." *Hinzman v. Palmanteer*, 81 Wash. 2d 327, 333-35, 501 P.2d 1228, 1233-33 (1972). *See also* 22 Am. Jur. 2d §§ 88, 128; 63 A.L.R.2d 1404.

9. **Motion to exclude any evidence of or reference to any collateral source benefits received by Plaintiff.**

Plaintiff was asked during deposition about whether she had applied for a disability-related benefits. Ex. 1, at pp. 15:10 – 16:12. Additionally, Dr. Chesnutt was questioned about disability benefit forms he completed on behalf of Plaintiff. "A federal court applies state law when it deals with the collateral source rule." *Berg v. First State Ins. Co.*, 915 F.2d 460, 467 (9th

**Plaintiff's Motions** *In Limine* - Page 12
Case No.: 3:19-cv-05553-BHS

Cir. 1990) (citing *Gypsum Carrier, Inc. v. Handelsman,* 307 F.2d 525, 535 (9th Cir. 1962)). Washington strictly forbids evidence of receipt of collateral source benefits. *Gilmore v. Jefferson Cty. Pub. Transp. Benefit Area*, 190 Wash. 2d 483, 498-99, 415 P.3d 212, 220 (2018) ("[E]vidence of collateral source income should be strictly excluded."). "In the context of personal injury actions, the collateral source rule has been the rule in Washington for 85 years." *Johnson v. Weyerhaeuser Co.*, 953 P.2d 800, 802 (Wash. 1998). "The 'rule is designed to prevent the wrongdoer from benefitting from third-party payments.'" *Id.* at 499 (quoting *Cox v. Lewiston Grain Growers, Inc.*, 85 Wash. App. 357, 375, 936 P.2d 1191 (1997)).

Any evidence or reference to such collateral source benefits, including Plaintiff's private medical insurance, or any other such benefits, must therefore be excluded.

10. **Motion to exclude any evidence of or reference to Plaintiff's sister's concussion.**

Plaintiff was also questioned during deposition about attending a brain injury seminar with her sister, who has also experienced a concussion. Ex. 1, p. 76:3-25. Any reference to Plaintiff's sister and the fact that Plaintiff's sister had a concussion or concussions is wholly irrelevant, unfairly prejudicial, and should be excluded. F.R.E. 401-403. The fact that Plaintiff's sister experienced concussions is not relevant to any fact of consequence to be determined by the jury in this matter and would only serve to mislead the jury and confuse the issues. Therefore, any reference to Plaintiff's sister or this injury by Plaintiff's sister should be precluded.

Dated: September 7, 2021

**ROSSI VUCINOVICH PC**

By: *s/ James K. Vucinovich*
James K. Vucinovich, WSBA No. 29199
jvucinovich@rvflegal.com
**ATTORNEYS FOR PLAINTIFF**

**Plaintiff's Motions *In Limine*** - Page 13
Case No.: 3:19-cv-05553-BHS

**ROSSI VUCINOVICH P.C.**
1000 Second Avenue, Suite 1780
Seattle, Washington 98104
(425) 646-8003/ Fax (425) 646-8004