THE HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KYLIE STEELE, <br><br> Plaintiff, <br><br> v. <br><br> NATIONAL RAILROAD PASSENGER CORPORATION, d/b/a AMTRAK, <br><br> Defendant. | Case No. 3:19-cv-05553-BHS <br><br> **DEFENDANT NATIONAL RAILROAD PASSENGER CORPORATION'S TRIAL BRIEF** |

Defendant National Railroad Passenger Corporation ("Amtrak" or "Defendant") respectfully submits the following trial brief.

## I. STATEMENT OF FACTS

This case arises from the derailment of Amtrak Cascades Train 501 ("Amtrak 501") in DuPont, Washington on December 18, 2017. Plaintiff Kylie Steele was a passenger on Train 501. Amtrak has already admitted liability for compensatory damages proximately caused by the derailment. Dkt. 7, at ¶¶ 4.2, 5.1. Thus, the only issue for the upcoming jury trial is the amount of Plaintiff's compensatory damages.

Plaintiff Kylie Steele was a 24-year old graduate student at Antioch University at the time of the derailment. In addition to a mild neurocognitive disorder that has been determined to have been caused by the derailment, Plaintiff also claims certain other injuries and symptoms. With respect to any alleged physical injuries and disfigurement, there does not appear to be any

DEFENDANT NATIONAL RAILROAD PASSENGER
CORPORATION'S TRIAL BRIEF - 1
CASE NO. 3:19-cv-05553-BHS
019188.0447/8648040.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

evidence of this. Plaintiff did not sustain any broken bones or any torn muscles or scarring. One of her treating providers (Dr. Nago) opined that the disc bulges in her cervical spine "are extremely small so unlikely causing pain [and the] pain is more likely musculoskeletal." There has not been any clear indication of what may be causing Ms. Steele's alleged neck pain. Her range of motion is normal. The physical therapy she received appears to be limited to improving functional goals, which Plaintiff appears to have met. Indeed, Ms. Steele engages in various activities, including running, biking, yoga and kayaking. Although she may have met the criteria for PTSD immediately after the 2017 accident, a neuropsychologist ruled out PTSD. There is little to no diagnostic evidence that Ms. Steele suffers from post-traumatic stress disorder, and it is unclear if her diagnosis of mood disorder and depressive disorder is causally related to the derailment.

She is independent and able to drive. In response to further discovery requests regarding Ms. Steele's job search, including the names of the career websites she used to apply for jobs, the names of the resume preparation search or career search professionals she has used, and all supporting documentation, Ms. Steele could only recall updating her LinkedIn profile post-derailment and has not used Monster, CareerBuilder, or Indeed. She did not produce any printouts of any jobs that she applied to via a career website. Although she has only obtained some assistance to improve her resume at a networking workshop while she was in graduate school, she has not worked with a career search professional with her job search and has not produced any documentation that she applied to any jobs since graduating in June 2019. All she was able to provide were applications for, and email communications with, organizations offering volunteer opportunities.

## II.  ARGUMENT AND LEGAL AUTHORITY

A.  **Admitted Liability**

Amtrak has admitted liability for compensatory damages caused by the derailment and there are no contested negligence or other intent-related issues to address in this damages trial.

DEFENDANT NATIONAL RAILROAD PASSENGER
CORPORATION'S TRIAL BRIEF - 2
CASE NO. 3:19-cv-05553-BHS
019188.0447/8648040.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

Amtrak has moved *in limine* to exclude all liability evidence as irrelevant and prejudicial. In previous trials arising out of this incident, the Court has established its parameters with respect to evidence such as scene video, photographs, and audio recordings. Nonetheless, Amtrak anticipates efforts by Plaintiff to get evidence that is cumulative or otherwise outside the permissible scope of the "context" evidence previously allowed by the Court before the jury. The Court should exclude all such evidence under Federal Rule of Evidence 403 based on its lack of probative value, as well as both the incredible amount of time such evidence would waste and its sole purpose being to prejudice Amtrak and confuse the jury.

The Court should not permit Plaintiff to introduce evidence of Amtrak's conduct, or reference in any way sending a message to Amtrak, such as reference to the jury being the "conscience of the community" or similar language designed to seek punishment of Amtrak.

**B.    Damages**

    1.    <u>Compensatory Damages</u>

Plaintiffs will likely ask for an inflated compensatory damages award. Plaintiff and her medical experts will offer testimony regarding the symptoms of the various diagnoses and their impact on Plaintiff. However, it is important to note that there will also be ample testimony regarding Plaintiff Steele's recovery, pre-existing conditions, excellent prognosis, and complete lack of effort to find paid employment.

    2.    <u>Economic Damages</u>

In her motions *in limine*, Plaintiff stated that she is not making a claim for out of pocket medical expenses. Dkt. 33, at 4:13-14 ("Plaintiff is not making any claim for past subrogated medical expenses, or for past out-of-pocket medical expenses…."). As this Court has ruled in Related Cases, the jury should be advised through an instruction that there is no claim for past medical expenses. *See, e.g., Haque v. NRPC*, No. 3:19-cv-05417-BHS, Pretrial Transcript 6:5-19 attached as Ex. A to the Declaration of Andrew G. Yates ("Yates Decl."), September 21, 2021, at ¶ 2.

DEFENDANT NATIONAL RAILROAD PASSENGER
CORPORATION'S TRIAL BRIEF - 3
CASE NO. 3:19-cv-05553-BHS
019188.0447/8648040.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

In any event, medical expenses paid by Amtrak on Plaintiff's behalf are not eligible for recovery, nor is evidence of such expenses admissible. *See Clark v. National R.R. Passenger Corp.*, 654 F.Supp. 376 (D. D.C. 1987) (excluding all direct and indirect evidence of plaintiff's medical expenses paid by Amtrak or its insurer); *Mead v. National R.R. Passenger Corp.*, 676 F.Supp. 92, 94 (D. Md. 1987) (excluding plaintiff's proffered evidence of medical expenses paid by Amtrak or its insurer). Amtrak anticipates the parties will work together in good faith to remove any issue of outstanding medical bills from the case by agreement.

### 3. Punitive Damages

Plaintiff has not alleged punitive damages. All references to punitive damages, or the idea of a verdict meant to punish Amtrak also should be barred as irrelevant and prejudicial. FRE 402, FRE 403; *Computer Sys. Eng'g, Inc. v. Qantel Corp.*, 740 F.2d 59, 68 (1st Cir. 1984) ("It cannot be doubted that punitive damage evidence has 'a real potential for influencing the jury's determination of liability for and the amount of compensatory damages.'") (*quoting* J. Ghiardi & J. Kircher, Punitive Damages § 12.01 (1983)). Discussion of punitive damages or evidence related to punitive damages has no bearing on compensatory damages. FRE 401. Moreover, discussion of punitive damages being available in other jurisdictions, or even the idea of punitive damages, is likely to lead to jury confusion. FRE 403. This includes references to the jury being the "conscience" of the community, telling the jury to "send a message" or similar statements. The Court should not permit Plaintiff to introduce evidence of Amtrak's conduct, or reference punitive damages in any way, such as reference to the jury being the "conscience of the community" or similar language designed to seek punishment of Amtrak.

### C. Cumulative Testimony and other Evidence Must be Barred

Under FRE 403 and LCR 43 (j), parties are barred from presenting needlessly cumulative or duplicative testimony or other evidence. Indeed, in related cases, this Court has expressed its concern about duplicative evidence. *See, e.g.*, *Garza v. NRPC* pretrial transcript, at 22:9-14. This Court properly limited Plaintiff in *Garza* from presenting cumulative testimony or other evidence

DEFENDANT NATIONAL RAILROAD PASSENGER
CORPORATION'S TRIAL BRIEF - 4
CASE NO. 3:19-cv-05553-BHS
019188.0447/8648040.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

and it should do so in this trial.  Amtrak reserves the right to object to cumulative testimony and evidence as necessary at trial.

**D.     Evidence of Amtrak's Liability Should Not Be Permitted.**

Because Amtrak has admitted liability, all liability evidence and references should be excluded because they are irrelevant and prejudicial.  FRE 402 bars admission of any irrelevant evidence, and FRE 403 bars the introduction of evidence if its relevance is substantially outweighed by the danger of unfair prejudice.  Accordingly, this Court should bar Plaintiff from introducing any liability evidence.

The parties have entered into a stipulation regarding facts of the incident, which dispenses the need for a liability expert to testify at trial.  Specifically, the parties agree that on December 18, 2017, Amtrak Train 501 was traveling southbound from Seattle, Washington toward Portland, Oregon; that Plaintiff was a passenger on Train 501 and was in the sixth passenger car which bore the number AMTK 7422; that the Amtrak train was traveling at 78 miles-per-hour when it entered the 30 mile-per-hour curve, near Dupont, Washington; and that the lead locomotive and passenger cars, including AMTK 7422, derailed as it traveled through the curve.  Consistent with the parties' joint stipulation, Amtrak has stipulated to the admissibility of numerous exhibits that Plaintiff intends to introduce at trial, including photographs of the passenger car that bore the number AMTK 7422.  Amtrak also stipulated to the admissibility of an animation of the derailment, provided that the video is played without sound.

As a general rule, "[w]hen the defendant in a negligence case admits liability and contests only the question of damages, he is entitled to have excluded from the testimony all references to the manner in which the accident occurred except such as are relevant to the question of damages." *Snyder v. General Elec. Co.*, 47 Wn.2d 60, 68, 287 P.2d 108 (1955); *see also Jones v. Carvell*, 641 P.2d 105, 112 (Utah 1982) (citing *Snyder*, "the rule is well-established that where liability is admitted, evidence going only to liability is not admissible."); *Murray v. Mossman*, 52 Wash. 2d 885, 888, 329 P.2d 1089, 1091 (1958) (in an admitted liability case, the Court limited evidence about the specifics of the accident to details that had bearing on damages); *see*

DEFENDANT NATIONAL RAILROAD PASSENGER
CORPORATION'S TRIAL BRIEF - 5
CASE NO. 3:19-cv-05553-BHS
019188.0447/8648040.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

*also Barrick v. Am. Airlines, Inc.*, No. C16-5957-JCC, 2017 WL 3424874, at *1 (W.D. Wash. Aug. 8, 2017)[1] (citing *Broncel v. H & R Transp., Ltd.*, 2011 WL 319822, (E.D. Cal. Jan. 28, 2011) (granting defendants a protective order prohibiting the deposition of the at-fault driver and written liability discovery where the defendants were willing to stipulate that the employee driver was negligent and that this negligence was the sole cause of the accident.); *Ayat v. Societe Air France*, 2008 WL 114936, (N.D. Cal. Jan. 8, 2008) (limiting discovery to damages issues where Air France admitted liability and withdrew its liability-based affirmative defenses in a case in which its plane had overshot a runway and crashed into a ravine).

There is no basis for the introduction of liability evidence at trial in this case. Examples of such evidence include, but are not limited to, the Amtrak General Order applicable to the Lakewood Subdivision, pre-revenue service hazard analyses, Amtrak's System Safety Program Plan, the event recorder data from the leading and trailing locomotives, and inward and outward facing video from these units, documents and testimony regarding the testing and training of the operating crews, references to mechanical or technical issues before the train left Seattle, and the over-speed that caused the derailment.

Amtrak would be unfairly prejudiced if Plaintiff is allowed to refer to the details of the derailment, or the causes of the derailment. Any evidence which is not related to Plaintiff's damages are completely irrelevant to any issues the jury will need to decide as only damages are at issue here. In the Related Cases that have gone to trial, the Court properly ruled that such evidence was not admissible in the damages portion of the trial. Amtrak's motion on this issue includes not only references to the incident themselves, but also any statements issued by Amtrak officials to the media and the public regarding the incident.

---

[1] Although *Barrick* permitted some liability discovery following the defendant's admission of liability for compensatory damages, it did so because defendant had not clearly admitted that it was the cause of plaintiff's injuries. Here, in dispositive contrast, Amtrak has expressly admitted liability for Plaintiff's injuries caused by the derailment.

DEFENDANT NATIONAL RAILROAD PASSENGER
CORPORATION'S TRIAL BRIEF - 6
CASE NO. 3:19-cv-05553-BHS
019188.0447/8648040.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

### E. Plaintiff's experts and treating providers should be precluded from offering testimony outside of their area of expertise.

Proffered expert testimony needs to advance a material portion of a party's case in order to be admissible. *Daubert v. Merrell Dow Pharm., Inc*. 43 F.3rd 1311, 1315 (9th Cir. 1995) *(Daubert II); Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1184 (9th Cir. 2002). Under the *Daubert* standard, expert testimony must be both relevant and reliable. *Daubert II*, 43 F.3d at 1313 (quoting *Daubert v. Merrell Down Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)). *See also Primano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) *(*"Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline.").

In order to be reliable and thus admissible, expert testimony must rest upon a sound methodology. *Henricksen v. ConocoPhillips Co.*, 605 F.Supp.2d 1142, 1154 (E.D. Wash. 2009) ("Something doesn't become scientific knowledge just because it's uttered by a scientist; nor can an expert's self-serving assertion that his conclusions were derived by the scientific method be deemed conclusive. 'The expert's bald assurance of validity is not enough. Rather the party presenting the expert must show that the expert's findings are based on sound science, and this will require some objective, independent validation of the expert's methodology.'") (quoting *Daubert II*, 43 F.3d at 1315-16). Where the proposed expert's testimony is not based on scientifically sound methodology, the proposed testimony must be excluded and deemed inadmissible. *Id.* at 1163; *see also Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 605-07 (9th Cir. 2002) (holding that the district court did not abuse its discretion in excluding proposed expert's testimony regarding the cause of plaintiff's injuries because expert's causation theory lacked scientifically valid principles and methodology); *Good v. Fluor Daniel Corp.*, 222 F.Supp.2d 1236, 1244, 1246-46 (E.D. Wash. 2002) (excluding two proposed testimonies by experts because the methodology had not been objectively or independently validated or had not met the *Daubert* test). Under a *Daubert* analysis, the trial judge must determine that the offered

DEFENDANT NATIONAL RAILROAD PASSENGER
CORPORATION'S TRIAL BRIEF - 7
CASE NO. 3:19-cv-05553-BHS

019188.0447/8648040.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

testimony is properly grounded, well-reasoned, and not speculative. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 158, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). *See also* Fed. R. Evid. 702 Advisory Notes (2000).

This analysis applies to medical experts and treating providers. Medical providers should be barred from giving any testimony that does not meet the requisite degree of certainty, and a treating physician who does not provide a report can only testify "to the extent that his opinions were formed during the course of treatment." *Goodman v. Staples The Off. Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011). A treating physician "may testify within a permissive core on issues pertaining to treatment… based on what he or she learned through actual treatment and from the plaintiff's records." *Garcia v. Praxair, Inc.*, No. 1:18-CV-01493-SAB, 2021 WL 38183, at *9 (E.D. Cal. Jan. 5, 2021); *see also Reyna v. Lowe's HIW, Inc.*, No. 1:13-CV-00111-REB, 2015 WL 5142086, at *5 (D. Idaho Sept. 1, 2015) (a "treating physician cannot testify as to opinions formed beyond course of treatment—as expert witness—unless those opinions are accompanied by written report").

    1. <u>Michelle Brown, Psy.D.'s Opinions With Respect to Plaintiff's Alleged Work Abilities After November 2019 Should Be Barred.</u>

Dr. Michelle Brown, Psy.D. is a clinical psychologist. At her deposition, she testified that she treated Plaintiff until November 2019 and has not had any contact with her since then. Yates Decl., at ¶ 3 and Ex. B (Brown Dep. 11:1-6). When asked about whether Plaintiff could work 40 hours a week after November 2019, Dr. Brown admitted that she could not say for sure since she did not know how Plaintiff has progressed since then. Ex. B (Brown Dep. 44:22-45:8). Because Dr. Brown has not treated Plaintiff since November 2019, and because she admits that she did not know if Plaintiff had many any progress since November 2019, her testimony should be limited to her opinions based on her treatment from January 2018 through November 2019.

DEFENDANT NATIONAL RAILROAD PASSENGER
CORPORATION'S TRIAL BRIEF - 8
CASE NO. 3:19-cv-05553-BHS
019188.0447/8648040.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

**F.    Rik Lemoncello is Not A Treater or Expert, and His Testimony Should Be Limited to His Factual Observations of Plaintiff's Work At The Bakery and His Interactions with Plaintiff.**

Rik Lemoncello, Ph.D. is a speech language pathology professor who helps run a not for profit bakery where Plaintiff used to volunteer.  Yates Decl., at ¶ 4and Ex. C (Lemoncello Dep. 9:4-9).  Dr. Lemoncello testified that Ms. Steele is neither a client nor a patient.  *Id.* (Lemoncello Dep. 17:11-13, 25:22-25).  He has never seen her medical records. *Id.* (Lemoncello Dep. 31:18-21).  However, Dr. Lemoncello was Plaintiff's supervisor and job coach at the bakery.  *Id.* (Lemoncello Dep. 17:23-18:3).  During her volunteer time at the bakery, Plaintiff worked in front of the house, where she operated the cash register, interacted with customers and packaged the cupcakes for customers.  *Id.* (Lemoncello Dep. 31:15-17, 31:22-33:2).  Plaintiff was training for a person-in-charge role in the back of the house, and Dr. Lemoncello testified at his deposition that he would not be comfortable with Plaintiff being the person in charge of four bakers who had acquired brain injuries because it was challenging for Kylie. *Id.* (Lemoncello Dep. 37:1-38:13).  Instead, the bakery hired two licensed speech pathologists who will take over back of the house operations.  *Id.* (Lemoncello Dep. 38:1-13).  Even the other person who was training for the person in change position was unable to succeed in that role, so the bakery decided to hire licensed therapist to fill that role.  *Id.* (Lemoncello Dep. 38:14-39:10).  Although Dr. Lemoncello observed Ms. Steele in several shifts, he admits that he is not a vocational rehabilitation counselor and was not even aware that Plaintiff had one, nor has anyone from the Office of Vocational Rehabilitation contacted him.  *Id.* (Lemoncello Dep. 61:14-62:23).  In fact, Dr. Lemoncello does not believe he has ever talked to Plaintiff about returning to another job.  *Id.* (Lemoncello Dep. 63:5-14).  Dr. Lemoncello should not be permitted to offer any opinion testimony and should be limited to his factual observations and interactions with the Plaintiff.

**G.    NTSB Materials and Findings are Inadmissible**

Initially, based upon the sole issue at trial being the amount of compensatory damages to be awarded to the Plaintiffs, there is no basis for any NTSB information being admitted.

DEFENDANT NATIONAL RAILROAD PASSENGER
CORPORATION'S TRIAL BRIEF - 9
CASE NO. 3:19-cv-05553-BHS
019188.0447/8648040.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

Moreover, the NTSB issues two types of reports in the investigation of an accident: a board accident and factual accident report. 49 C.F.R. § 835.2. A board accident report is "the report containing the Board's determinations, including the probable cause of an accident." *Id.* A factual accident report is "the report containing the results of the investigator's investigation of the accident." *Id.* Courts treat these two report types differently in terms of their admissibility and use in court.

Federal law explicitly prohibits the use or admittance into evidence of NTSB board accident reports, whether in full or in part, "in a civil action for damages resulting from a matter mentioned in the report." 49 U.S.C. § 1154(b); 49 C.F.R. § 835.2. Board accident reports are inadmissible in such actions because determination of probable cause is for the jury or fact finder. *See Britton v. Dallas Airmotive, Inc.*, No. 1:07-CV-00547-EJL, 2011 WL 13196592, at *2 (D. Idaho May 20, 2011) (granting plaintiffs' Motion *in Limine* to exclude the NTSB board report and all opinions from the Board, and denying plaintiffs' Motion *in Limine* to exclude the NTSB factual reports of the investigators). The use of NTSB factual reports appears to be an open question in the Ninth Circuit, as addressed in more detail in Amtrak's Motions *in Limine*.

Amtrak has moved *in limine* to exclude any references to the NTSB investigation materials and findings. *See* Dkt 33, at 7:1-9. The reports are statutorily inadmissible in a civil action for damages resulting from a matter mentioned in the report. 49 U.S.C. § 1154(b). Additionally, as noted, the findings are irrelevant to this matter as they go to the cause of the incident, which is not at dispute here as Amtrak has admitted liability for compensatory damages.

H.  **Positive Train Control**

Based upon Amtrak's admission of liability and for the reasons set forth in Amtrak's Motions *in Limine* (Dkt. 31, at 12:12-13:22), the Court should exclude all references to Positive Train Control (PTC). Positive Train Control is an integrated system that relies on components along the railroad right of way, in the locomotive or other control unit of the train, and in the host railroad or other entity's "back office," which function together to automatically slow and stop trains that are at risk of exceeding a speed restriction. While Amtrak did not have a PTC system

DEFENDANT NATIONAL RAILROAD PASSENGER
CORPORATION'S TRIAL BRIEF - 10
CASE NO. 3:19-cv-05553-BHS
019188.0447/8648040.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

in place for the Point Defiance Bypass at the time of the incident, it also <u>was not required to have a PTC system in place until after December 18, 2017</u> – the date that the incident occurred. 49 C.F.R. § 236.1005(b)(7)(i) ("Each railroad must complete full implementation of its PTC system by December 31, 2018."). Because Amtrak was not required to utilize or operate PTC at the time of the derailment, the absence of such a system at the time of the derailment is irrelevant, and any Inferences created by such evidence or argument would be improper and prejudicial.

Further, even if some duty to implement PTC existed on December 18, 2017 – though it did not, as a matter of law – any PTC argument is still pre-empted by federal statute. "Under the preemption doctrine, states are deemed powerless to apply their own law due to restraints deliberately imposed by federal legislation." *Veit, ex rel. Nelson v. Burlington N. Santa Fe Corp.*, 171 Wn.2d 88, 102, 249 P.3d 607, 614 (2011) (holding that excessive track speed claims based on Washington State tort law were preempted). Where, as here, a railroad safety issue is regulated completely by federal law, state law tort claims based on a different standard are preempted under long-standing and well-established United States Supreme Court precedent. *See, e. g., CSX Transp., Inc. v. Easterwood*, 507 U.S. 658 (1993) (excessive track speed claims preempted); *Norfolk S. Ry. Co. v. Shanklin*, 529 U.S. 344 (2000) (grade crossing safety device claims preempted). Moreover, the installation of PTC on this territory would have been the responsibility of the owner of the track, Sound Transit, not Amtrak. The Court should also prohibit Plaintiff from referencing Positive Train Control as it is pre-empted by federal statute.

I.  **Medical Testimony that Does Not Meet the Required Standard Should Not Be Admitted**

"Expert testimony may not be based on speculation or conjecture; an expert must testify to his or her conclusions to a reasonable degree of medical certainty." *Brannan v. Nw. Permanente, P.C.*, No. C05-5157 FDB, 2006 WL 2781337, at *1 (W.D. Wash. Sept. 25, 2006) (internal citations omitted). As discussed *supra,* Amtrak anticipates that Plaintiff may attempt to offer opinion testimony from her treating providers regarding Plaintiff's mental health condition, which may be outside the scope of her expert's opinion. Amtrak objects to this attempt and will

DEFENDANT NATIONAL RAILROAD PASSENGER
CORPORATION'S TRIAL BRIEF - 11
CASE NO. 3:19-cv-05553-BHS
019188.0447/8648040.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

move to exclude any such opinions. These and any other expert or medical provider should be barred from giving such testimony if their opinions do not meet the requisite degree of certainty.

### J. Evidence that Amtrak Receives Government Subsidies Should Not Be Admitted

As a Congressionally-created corporation that is more than 50 percent owned by the United States, Amtrak receives annual subsidies from the federal government. Such evidence has no bearing on any issue the jury will be asked to decide, and is therefore irrelevant and should be excluded. FRE 401-402. While it is unclear whether such evidence could serve *any* permissible purpose, there *is a danger* that it could confuse or prejudice the jury. FRE 403. For example, by suggesting that Amtrak either is affiliated with or controlled by the government or has government resources from which payment of a higher damages award could be made, the jury may increase any compensatory award. Any such implication would be improper.

### K. This Court Should Instruct the Jury that Plaintiff Will Not Have to Pay Taxes on the Jury's Award

Plaintiff has moved *in limine* to prevent Amtrak and their attorneys from arguing in closing arguments or imply during *voir dire* or at trial any reference to tax issues. *See* Dkt. 33, at 12-17. This would be inconsistent with this Court's prior rulings in Related Cases, which allowed this information to be given to the jury and to give an instruction on it. Ex. A (*Haque* PTC 19:10-20:4). Thus, to the extent that Plaintiff seek to preclude the Court from instructing the jury that their award to Plaintiff will not be taxed, Amtrak opposes this and requests that the Court's prior rulings be consistently applied to this case.

Internal Revenue Code 104(a)(2) provides that gross income does not include "the amount of any damages (other than punitive damages) received . . . on account of personal physical injuries or physical sickness." The United States Supreme Court has held that if requested, the jury must be instructed that the verdict will not be subject to income taxes. *Norfolk & Western Ry. Co. v. Liepelt*, 444 U.S. 490, 498 (1980) (FELA case). The Court so held because it did not want a jury to "improperly inflate" the amount of recovery based on an erroneous belief that "a large portion of the award would be payable to the Federal Government in taxes." *Id.* at

DEFENDANT NATIONAL RAILROAD PASSENGER
CORPORATION'S TRIAL BRIEF - 12
CASE NO. 3:19-cv-05553-BHS
019188.0447/8648040.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

497.  *See also Burlington N., Inc. v. Boxberger*, 529 F.2d 284, 297 (9th Cir. 1975) ("We cannot believe that, in the absence of such a [tax] instruction, many jurors would not assume that the award would be taxable and thus be inclined to increase their damages award accordingly.  The benefits of informing the jury of the true tax consequences are so clear, and the burden in terms of time and the possibility of confusion so minimal, that we believe the balance is overwhelmingly in favor of giving such an instruction.  To put the matter simply, giving the instruction can do no harm, and it can certainly help by preventing the jury from inflating the award and thus overcompensating the plaintiff on the basis of an erroneous assumption that the judgment will be taxable.").  *See also Kennett v. Delta Airlines, Inc.*, 560 F.2d 456, 462, n.7 (1st Cir. 1977) ("If there was some basis in the record indicating that the jury would assume that the award was taxable and would, therefore, take such an irrelevant factor into account in its determination, failure to give the requested instruction would have been error." (citing *McWeeney v. New York, New Haven & Hartford Railroad*, 282 F.2d 34 (2d Cir.), *cert. denied*, 364 U.S. 870 (1960)).

As one court observed, the *Liepelt* decision "created the federal common law rule that it is error to refuse a tax consequence instruction."  *Selby v. Lovecamp*, 690 F. Supp. 733 (N.D. Indiana 1988).  And the *Liepelt* decision is not limited to cases arising under the Federal Employment Liability Act; it has been extended to other types of cases, such as wrongful death actions.  In *re Air Crash Disaster Near Chicago, Illinois, May 25, 1979*, 803 F.2d 304 (7th Cir. 1986), the Seventh Circuit court observed that Illinois law barred a nontaxability instruction, but it applied federal common law because Illinois law offered no substantive reasons for the bar.  803 F.2d at 314-15.  The court specifically held that "the federal rule that the jury should be instructed that its award is not subject to federal income taxation is a matter of federal common law." *Id.* at 314.  Since then, Illinois federal courts have rejected motions *in limine* calling for a ban on tax instructions.  See *Opio v. Wurr*, 901 F.Supp. 1370, 1373-74 (N.D. Ill. 1995); *Nichols v. Johnson*, 2002 WL 826482, at *1 (N.D. Ill. May 1, 2002); *Couch v. Village of Dixmoor*, No. 05-C-963, 2006 WL 3409153, *2 (N.D. Ill. Nov. 27, 2006); *Cimaglia v. Union Pacific Railroad*

DEFENDANT NATIONAL RAILROAD PASSENGER
CORPORATION'S TRIAL BRIEF - 13
CASE NO. 3:19-cv-05553-BHS
019188.0447/8648040.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

*Co.*, No. 06-3084, 2009 WL 499287, *8-9 (C.D. Ill. Feb. 25, 2009).  In summary, giving a tax instruction "can do no harm, and it can certainly help by preventing the jury from inflating the award."  *Burlington N., Inc. v. Boxberger*, 529 F.2d 284, 297 (9th Cir. 1975).  Amtrak has proposed such an instruction, and it should be given.

**L.   Adverse Publicity**

Amtrak anticipates significant adverse publicity surrounding the trial, as this is only the fourth of many DuPont matters expected to reach trial.  The risk of bias of public opinion will be far higher amidst this increased publicity, and Amtrak has set forth its reasons why evidence and reference to media coverage should be excluded under FRE 401-403 in its Motions *in Limine*.  But Amtrak raises this issue again, by way of notice to the Court in the event that specific concerns arise in the course of the trial, and because Amtrak anticipates the need for additional inquiries (either by Amtrak or the Court) to ensure the absence of juror bias.

### III.  CONCLUSION

Amtrak looks forward to the trial of this matter set to commence on October 12, 2021 at 9:00 a.m.

DATED this 21st day of September, 2021

LANE POWELL PC


By  *s/ Tim D. Wackerbarth*
Tim D. Wackerbarth, WSBA No. 13673
wackerbartht@lanepowell.com
Andrew G. Yates, WSBA No. 34239
yatesa@lanepowell.com

DEFENDANT NATIONAL RAILROAD PASSENGER
CORPORATION'S TRIAL BRIEF - 14
CASE NO. 3:19-cv-05553-BHS
019188.0447/8648040.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

LANDMAN CORSI BALLAINE & FORD, PC

By  *s/ Mark S. Landman*
    Mark S. Landman, *Pro Hac Vice*
    mlandman@lcbf.com
    John A. Bonventre, *Pro Hac Vice*
    jbonventre@lcbf.com

*Attorneys for Defendant National Railroad Passenger Corporation*

DEFENDANT NATIONAL RAILROAD PASSENGER
CORPORATION'S TRIAL BRIEF - 15
CASE NO. 3:19-cv-05553-BHS

019188.0447/8648040.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107